IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

NEVAN WILSON,

        Plaintiff,

v.

HI-TECH STL LOGISTICS, INC.,

        Defendant.

Case No. 24-CV-01567-SPM

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

This matter comes before the Court for consideration of three motions: a Motion to Dismiss (Doc. 7) filed by Defendant Hi-Tech STL Logistics, Inc. ("Hi-Tech") and a Motion to Remand (Doc. 10) and a Motion to Amend/Correct Complaint (Doc. 12) filed by Plaintiff Nevan Wilson. Having been fully informed of the issues presented, Hi-Tech's Motion to Dismiss is **DENIED**, Wilson's Motion to Remand is **DENIED**, and Wilson's Motion to Amend/Correct Complaint is **GRANTED**.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Nevan Wilson is a former employee of Hi-Tech. (*See* Doc. 1, Ex. A, ¶ 3). While driving on Highway 270 in Granite City, Illinois, "a vehicle travelling the opposite direction flipped in the air and landed on the truck Plaintiff was driving" causing Wilson to suffer "injuries to his head, neck, back, right arm, stomach, tailbone, shoulder, teeth and ribs." (*Id.*, Ex. A, ¶¶ 5–6). Wilson states that he filed an Application for Adjustment of Claim with the Illinois Workers' Compensation Commission on September 21, 2021 and subsequently "required extensive medical

treatment and medical leave from Hi-Tech." (*Id.*, Ex. A, ¶¶ 7–8). After returning to work with "restrictions" on March 22, 2022, Wilson alleges that he was terminated by Hi-Tech on March 24, 2022. (*Id.*, Ex. A, ¶¶ 9–11). He filed the instant Complaint on March 13, 2024 in the Circuit Court for the Third Judicial Circuit in Madison County, Illinois. (*See id.*, Ex. A). He brings a single claim—that Hi-Tech terminated him for exercising his rights under the Illinois Workers' Compensation Act ("IWCA"), thus violating Illinois public policy. (*Id.*, Ex. A, ¶¶ 17–18). He alleges that Hi-Tech's "actions were intentional with reckless indifference to Plaintiff's rights and sensibilities" and seeks money damages. (*Id.*, Ex. A, ¶ 19).

Hi-Tech removed this action to federal court on June 21, 2024. (*See id.*). They filed the pending Motion to Dismiss on June 28, 2024. (*See* Doc. 7). Wilson filed a Motion to Remand on July 19, 2024 arguing that this case should be remanded back to Illinois state court. (*See* Doc. 10). On July 26, 2024, Wilson filed a Motion to Amend/Correct Complaint (Doc. 12) in response to Hi-Tech's Motion to Dismiss (Doc. 7). On July 29, 2024, the Court established a consolidated briefing schedule to address all of the pending motions. (*See* Doc. 15). Hi-Tech's response brief was filed on August 19, 2024 (*see* Doc. 16) and Wilson's reply brief was filed on September 2, 2024 (*see* Doc. 17).

## APPLICABLE LAW AND LEGAL STANDARDS

In analyzing a motion to dismiss for failure to state a claim filed pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must determine whether or not the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court of Appeals for the Seventh Circuit has explained that "'[p]lausibility' is not a synonym for 'probability' in this context, but it asks for 'more than a sheer possibility that a defendant has acted unlawfully.'" *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015) (quoting *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [the] [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

District courts are required by the Court of Appeals for the Seventh Circuit to review the facts and arguments in Rule 12(b)(6) motions "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

## ANALYSIS

### I. Jurisdiction

As the parties have raised the issue of whether diversity jurisdiction exists, the Court will assess these arguments first as the Court has an independent duty to ensure that it has subject matter jurisdiction to hear cases brought before it. *Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 778 (7th Cir. 1994). The Supreme Court has long instructed that "federal courts, as courts of limited

jurisdiction, must make their own inquiry to ensure that all statutory requirements are met before exercising jurisdiction." *Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 634 (7th Cir. 2021). Subject matter jurisdiction cannot be waived and may be "raised *sua sponte* by the court at any point in the proceedings." *Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 179 (7th Cir. 1994). In other words, this court cannot hear this action if it lacks subject matter jurisdiction, established through diversity citizenship of the parties under 28 U.S.C. § 1332 or pursuant to a federal question under 28 U.S.C. § 1331. Plaintiffs have the burden to prove that subject matter jurisdiction exists. *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). However, "[t]he party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 758 (7th Cir. 2009) (citing *Doe v. Allied–Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)).

In its Notice of Removal, Hi-Tech states that diversity of citizenship exists in accordance with 28 U.S.C. § 1332(a)(1) because Wilson is a citizen of Missouri and Hi-Tech "is a foreign corporation incorporated under the laws of Texas with its principal place of business in Oklahoma." (Doc. 1, ¶¶ 8–9 (citing *id.*, Exs. A, B)). Hi-Tech states that it "maintains its principal place of business in Tulsa, Oklahoma, where it employs a single employee who is responsible for the Company's administrative functions such as payroll, time keeping, benefits, mail, and other administrative tasks of the company" and that "all official mail and correspondence,

including its tax filings with the IRS, and the maintenance of its workers' compensation insurance" are directed through this location." (Doc. 1, ¶ 10 (citing *id.*, Ex. B, ¶ 9)). Hi-Tech states that "[a]ll decisions related to Hi-Tech STL are made by the management-level and executive-level employees of Hi-Tech Logistics, Inc., who all work remotely from Texas" and that "Hi-Tech STL Logistics, Inc. does not maintain any physical office space, and does not own or lease any real property." (*Id.* (citing *id.*, Ex. B, ¶¶ 8, 10)).

Wilson contends that "Plaintiff was an employee of HI-STL which has its principal place of business in Missouri." (Doc. 10, ¶ 10 (citing *id.*, Ex. 1, 4)). He argues that "Defendant HI-STL essentially tries to bootstrap itself to the citizenship of its parent company Hi-Tech Logistics, Inc." and that because "the nerve center of HI-STL is in Missouri and Plaintiff is a resident of Missouri, this Court must remand as it lacks diversity jurisdiction." (*Id.*, ¶¶ 13, 14). Wilson argues that his former direct supervisor, James Easter, must be the "nerve center" of "Hi-Tech STL Logistics" because he "interviewed Wilson, hired Wilson, and set his schedule and routes." (Doc. 11, p. 7 (citing Wilson Dec., ¶¶ 4–7)). Wilson argues that "Defendant continues to ask the court to look outside of Hi-Tech STL Logistics, Inc.'s corporate structure" and that it "is attempting to pierce its own corporate veil to establish diversity jurisdiction." (Doc. 17, p. 2 (citing *Payphone LLC v. Brooks Fiber Commc'ns of R.I.*, 126 F.Supp.2d 175, 179 (D. R.I. 2001)). Wilson looks to both *Hertz Corp. v. Friend*, 559 U.S. 77 (2010) and *Topp v. CompAir Inc.*, 814 F.2d 830 (1st Cir. 1987) as supporting his analysis of James Easter being Hi-Tech STL's "nerve

center." (*See* Doc. 10, ¶ 11 (citing *Hertz*); Doc. 11, p. 8 (citing *Topp*); Doc. 17, p. 2 (citing *Topp*)).

Contrary to Wilson's assertions, neither *Hertz* nor *Topp* supports his analysis. In *Hertz*, the Supreme Court says that "'principal place of business' is best read as referring to the place where a corporation's *officers direct, control, and coordinate the corporation's activities*." *Id.* at 92 (emphasis added). "It is the place that Courts of Appeals have called the corporation's 'nerve center.' And in practice it should normally be the place where the corporation maintains its headquarters." *Id.* Wilson cannot conceivably argue that James Easter, the sole Hi-Tech STL employee in Missouri, is the corporation's "nerve center." Easter is not a corporate officer and, while he makes route schedules, he does not "direct, control, and coordinate the corporation's activities." *Id.* at 92. Moreover, Hi-Tech's officers and board members are also board members of all of Hi-Tech's wholly owned subsidiaries (including Hi-Tech STL). (*See* Doc. 15, pp. 5–7). As Hi-Tech emphasizes, Wilson's attempt to use Hi-Tech STL's Missouri Secretary of State filings is unavailing. (*See id.*, p. 8 (citing *Hertz* at 97 ("[W]e reject suggestions such as, for example, the one made by petitioner that the mere filing of a form like the Securities and Exchange Commission's Form 10–K listing a corporation's 'principal executive offices' would, without more, be sufficient proof to establish a corporation's 'nerve center.'"))).

It does not matter whether Hi-Tech's nerve center is in Tulsa, Oklahoma (where it receives mail) or in Texas (where its officers reside)—all that matters is that Hi-Tech is not a citizen of Missouri. Wilson's arguments regarding lack of diversity fail. The analysis does not stop here, however.

Wilson also contends that Hi-Tech "knew this was a case arising under the Missouri law and removed it to federal court knowing Missouri workers' compensation retaliation cases are non-removable." (Doc. 11, p. 4 (citing *Humphrey v. Sequentia, Inc.*, 58 F.3d 1238 (8th Cir. 1995)). Wilson argues that this Court does not have subject-matter jurisdiction over a claim arising under the Missouri Workers Compensation Law ("MWCL") (*see* Doc. 11, pp. 4–5) but also, in the alternative, seeks to amend his complaint to include a claim under the MWCL (*see* Doc. 12, p. 2; *id.*, Ex. 1).

In its Notice of Removal, Hi-Tech argues that because "Plaintiff's claim is a common law retaliatory discharge claim, the fact that the alleged protected activity was the filing of a workers' compensation claim does not preclude the removal of this lawsuit under 28 U.S.C. § 1445(c)." (Doc. 1, ¶ 13 n. 1 (citations omitted)); *see Spearman v. Exxon Coal USA*, 16 F.3d 722, 724 (7th Cir. 1994). Hi-Tech does not oppose Wilson's Motion to Amend. (*See* Doc. 16, p. 13).

The Court notes that Wilson filed workers' compensation claims under both the IWCA and the Missouri Workers' Compensation Act ("MWCL"). (*See* Doc. 10, Exs. 3, 4; *see also* Doc. 17, pp. 3–4). Wilson filed his claim under the MWCL first, then filed a claim under the IWCA after consulting with an attorney. (*See* Doc. 11, p. 2; *see also* Doc. 10, Exs. 3, 4). Wilson states that he "ultimately settled his injury claims under both Illinois and Missouri law" and that "[t]here will be no dispute Wilson availed himself to the benefits under both laws." (Doc. 11, p. 2 (citing *id.*, Ex. 3)). Wilson argues that "[a]llowing a defendant to avoid the intended purpose of the IWCA by firing an employee in another state is in direct contradiction to well

established Illinois law" and that "[i]f such a result were upheld, nothing would stop an employer from luring an employee to another state and then terminating them." (Doc. 13, p. 4).

However, Wilson's Complaint *expressly* seeks recovery for retaliatory discharge in violation of the IWCA, not pursuant to the MWCL. (*See* Doc. 1, Ex. A, ¶¶ 16–19). While Wilson compares the instant situation to *Rabé v. United Air Line, Inc.*, 636 F.3d 866 (7th Cir. 2011) in arguing that "[a] complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error," *id.* at 872, the Court notes that the plaintiff in *Rabé* was *pro se*. While Federal Rule of Civil Procedure 8 applies uniformly to all plaintiffs, (*see* Doc. 11, p. 5 (citing Rule 8)), "[a] document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Buechel v. United States*, 746 F.3d 753, 758 (7th Cir. 2014). Wilson is not proceeding *pro se* here, and, thus, cannot make use of caselaw designed for litigants proceeding without the benefit of counsel.

Additionally, Wilson's citation to Judge Easterbrook's opinion from *NAACP v. American Family Mut. Ins. Co.*, 978 F.2d 287 (7th Cir. 1992) is unavailing. The context of Judge Easterbrook's statement that "[o]ne set of facts producing one injury creates one claim for relief, no matter how many laws the deeds violate," *id.* at 292, refers to the fact that a plaintiff cannot pursue *separate* legal action after an unfavorable judgment under one legal theory. *See id.* ("Plaintiffs could not litigate and lose a suit asserting that American Family's redlining violates Title VIII,

pursue another asserting that redlining violates § 1981, and then crank up a third asserting that redlining violates § 1982."). Thus, Judge Easterbrook's statement is more akin to issue preclusion and does not provide Wilson with carte blanche to claim that he also pleaded an MWCL claim in his Complaint when he clearly (and unequivocally) only discusses and pursues relief pursuant to the IWCA. (*See* Doc. 1).

While Wilson argues that "workers' compensation claims under Missouri law are not removable as they arise under a workers compensation law," the critical flaw in Wilson's argument is that he did not bring a claim for retaliation arising under the MWCL in state court. (*See* Doc. 11, p. 5 (citing *Humphrey*, 58 F.3d 1238; 28 U.S.C. § 1445(c)). If he amends his Complaint to add a claim under the MWCL, he does not run afoul of the 28 U.S.C. § 1445(c) prohibition against *removal* of civil state workers' compensation laws.

Therefore, the Court holds that this case was properly removed pursuant to 28 U.S.C. § 1441 and that the Court has subject matter jurisdiction to address this dispute pursuant to 28 U.S.C. § 1332.

## II. Choice of Law

"A federal court sitting in diversity applies the choice of law rules of the state in which it sits." *Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500, 503 (7th Cir. 1998) (*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Birchler v. Gehl Co.*, 88 F.3d 518, 520 (7th Cir. 1996)). "The Illinois Supreme Court uses the 'most significant relationship' test for choosing the appropriate law in tort cases." *Id.* at 503–04 (citing *Esser v. McIntyre*, 661 N.E.2d 1138, 1141 (Ill. 1996)). The Illinois Supreme Court employs the following factors in making this determination:

"(1) the place of the injury, (2) the place where the injury-causing conduct occurred, (3) the domicile of the parties, and (4) the place where the relationship between the parties is centered." *Id.* (citing *Esser*, 661 N.E.2d at 1141). "The Illinois courts also consider 'the interests and public policies of potentially concerned states . . . as they relate to the transaction in issue.'" *Jones v. State Farm Mut. Auto. Ins. Co.*, 682 N.E.2d 238, 249 (Ill. 1997)).

The threshold question here, then, is whether Illinois or Missouri law should apply. Hi-Tech argues that "the physical injuries he allegedly suffered in the accident in Granite City are not the subject of this Action" and that "[s]imilarly, Plaintiff's alleged damages in this Action do not arise from the mere filing of a claim with the Illinois Workers' Compensation Commission. Instead, according to Plaintiff's Complaint, his damages allegedly resulted from his job termination." (Doc. 8, p. 4 (citing Doc. 1, Ex. A, ¶¶ 17–18)).

Hi-Tech argues that Wilson "began and ended every workday at the same FedEx facility in Hazelwood, Missouri," that his remote supervisor "worked remotely from Missouri," and that his next-level supervisor worked remotely from Texas. (Doc. 8, p. 1). They argue that "it is the situs of the alleged damages flowing from the termination decision (and not the underlying workers compensation injury and/or workers' compensation claim) that is the determining factor as to choice of law." (*Id.*, p. 4). Hi-Tech also argues that "[t]he injury causing conduct occurred when Defendant made the decision to terminate Plaintiff's employment, and that decision was communicated to Plaintiff" and that "Plaintiff has failed to allege facts indicating he was informed of his termination anywhere other than his place of

domicile, which is Missouri." (*Id.* (citing *Tanner v. Jupiter Realty Corp.*, 2004 WL 2966936, at *4 (N.D. Ill. Nov. 29, 2004))). Because "Missouri courts consistently adhere to the employment-at-will doctrine when considering wrongful discharge claims" and because "Missouri does not recognize a claim for wrongful discharge in violation of the state government's public policy against discrimination or retaliation because Missouri state statutes, such as the Missouri Workers' Compensation Act, preempt the subject matter and provide the exclusive remedy for any such claims," Hi-Tech argues that this case must be dismissed. (*Id.*, pp. 5–6).

Wilson agrees that Illinois's most significant relationship test is applicable here but argues that "[w]hen determining which state has a more significant relationship, the court does not merely count contacts in the abstract, but instead must evaluate a state's contacts in light of the state's '**interests and public policies . . . as they relate to the transaction in issue**.'" (Doc. 13, p. 5 (quoting *Fredrick*, 144 F.3d at 503–04)). Wilson's argument is thus that that Illinois law should apply because he was allegedly terminated for the exercise of his rights under the IWCA. (*See* Doc. 1, Ex. A, ¶¶ 16–19).

In *Fredrick*, an airline pilot brought suit against his former employer for tortious interference with prospective economic advantage and for retaliatory discharge. 144 F.3d at 502. The pilot argued that the law of Illinois should apply because his route was based in O'Hare Airport; Simmons Airlines argued that the laws of either Wisconsin (the pilot's domicile) or Texas (where Simmons Airlines was based) should apply. *See id.* at 503–04. The Seventh Circuit determined that because "some of the most central aspects of the case point to Illinois, we believe

that Illinois has a significant public policy interest in having its law apply to a claim of retaliatory discharge made by an airline employee whose work assignments began and ended within the state." *Id.* at 504.

Wilson argues that "the Court should look at Plaintiff's claims for relief, not his legal theories, to determine whether the case was removable" and argues that he "has a claim under various legal theories including that [sic] under Missouri and Illinois law." (Doc. 10, p. 2). He argues that "Plaintiff has sufficiently pled that Defendant continuously conducted business with the State of Illinois" and "Plaintiff's workers' compensation claim was filed in Illinois," and because his termination was for exercising his rights under the IWCA, that Illinois law should apply. (*See* Doc. 13, p. 5 (citing Doc. 1, Ex. A, ¶¶ 4, 8)).

The Court holds that Wilson has stated a claim under Illinois law. While a plaintiff may choose the forum in which he or she brings suit, it is clear that the injury at issue in the instant lawsuit occurred in Missouri, not in Illinois. However, Illinois does have a strong public policy interest in protecting workers' rights under the IWCA and the Court agrees that allowing employers to avoid liability by refusing to allow recovery in a state in which the worker received IWCA benefits and was allegedly terminated because of it would neuter the impact of the IWCA. Therefore, Illinois law must apply to Wilson's IWCA-based retaliation claim.

Additionally, should Wilson wish to add a claim under the MWCL, that claim would likely be governed by Missouri law, not Illinois law for the same reasons that Illinois law applies to Wilson's IWCA claim. The Seventh Circuit recognizes the concept of "dépeçage" or "'cutting into pieces' a single claim and subjecting different

issues to different jurisdictions' laws." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 809 n. 4 (7th Cir. 2020) (citing *Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842, 848 (7th Cir. 1999)). Here, the potential claims are clearly separable and the Court is able to apply the cognizant state's laws to each without depriving Wilson of a remedy. Therefore, should Wilson wish to amend his Complaint to add a claim under the MWCL, he is welcome to do so. Conversely, should Wilson wish to take advantage of the non-removability of claims brought pursuant to the MWCL as discussed in *Humphrey*, he is welcome to file a separate suit in Missouri state court in lieu of amending his Complaint.

## CONCLUSION

For the reasons set forth above, Defendant Hi-Tech STL Logistics, Inc.'s Motion to Dismiss (Doc. 7) is **DENIED**. Plaintiff Nevan Wilson's Motion to Remand to State Court (Doc. 10) is **DENIED** and Wilson's Motion to Amend/Correct Plaintiff's Complaint (Doc. 12) is **GRANTED**. Plaintiff Wilson shall either file an amended complaint or inform the Court if he intends to proceed without amending his Complaint within 14 days.

**IT IS SO ORDERED.**

**DATED: September 10, 2024**

<u>s/ *Stephen P. McGlynn*</u>
**STEPHEN P. McGLYNN**
**U.S. District Judge**